UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JEFFERSON LI, JOSEPH DIAZ, DAMIEN
DE FAZIO, and SEAN CUMMINGS,

                              Plaintiffs,

                    -v.-

DAVID HINK,

                              Defendant.

25 Civ. 1408 (KPF)

**OPINION AND ORDER**

KATHERINE POLK FAILLA, District Judge:

The instant lawsuit was filed because the parties to it have dramatically different recollections of events; whichever side is the correct one, their recollection is indisputably disturbing. Plaintiffs Jefferson Li, Joseph Diaz, Damien De Fazio, and Sean Cummings allege that Defendant David Hink defamed them in statements made at and in connection with a series of hearings; Mr. Hink's statements, however, concerned accusations that Plaintiffs engaged in the sexual harassment and sexual assault of Mr. Hink. During the relevant time period, Plaintiffs and Mr. Hink were all members of the United States Coast Guard, serving in the Coast Guard Reserve. Plaintiffs' lawsuit therefore potentially implicates the Federal Tort Claims Act (the "FTCA"), and the Government has moved, on behalf of Mr. Hink, to substitute the United States as the sole defendant and to dismiss the Complaint for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). For the reasons that follow, the Court grants the Government's motion.

**BACKGROUND**[1]

## A.    Factual Background

Plaintiffs and Mr. Hink were on duty for a Coast Guard Reserve "drill weekend" from April 23 to 24, 2022. (Judge Decl. ¶ 7). On or about May 6, 2022, Mr. Hink reported to a Coast Guard Sexual Assault Response Coordinator that Mr. De Fazio had sexually assaulted him during the drill weekend. (*Id.* ¶ 12; Hink Decl. ¶¶ 4, 6). Mr. Hink had shared a hotel room with some of the Plaintiffs and a bed with Mr. De Fazio. (Compl. ¶ 15). After Mr. Hink's report, the Coast Guard Investigative Service conducted an investigation, including by interviewing Mr. Hink and others and collecting evidence. (Judge Decl. ¶ 14; Hink Decl. ¶ 7). This evidence included a group text message among Plaintiffs, Mr. Hink, and other Coast Guard members in

---

[1]    This Opinion draws its facts from the Complaint ("Compl." (Dkt. #1-1)), the well-pleaded allegations of which are taken as true for purposes of this Opinion. *See Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009). The Court also relies on the Declarations of Brian Judge ("Judge Decl." (Dkt. #21)) and David Hink ("Hink Decl." (Dkt. #22)), attached to the Government's reply brief in support of its motion to dismiss ("Gov't Reply" (Dkt. #20)); and it has considered declarations submitted by Plaintiffs Joseph Diaz ("Diaz Decl." (Dkt. #15-2)) and Damien De Fazio ("De Fazio Decl." (Dkt. #15-3)). When resolving a Rule 12(b)(1) motion, the Court may consider evidence outside the pleadings, such as evidence presented in sworn statements. *Kamen* v. *Am. Tel. & Tel. Co.*, 791 F.2d 1006, 1011 (2d Cir. 1986) (When "subject matter jurisdiction is challenged under Rule 12(b)(1), evidentiary matter may be presented by affidavit or otherwise."); *Tandon* v. *Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014) ("'[W]here jurisdictional facts are placed in dispute, the court has the power and obligation to decide issues of fact by reference to evidence outside the pleadings, such as affidavits.' In that case, the party asserting subject matter jurisdiction 'has the burden of proving by a preponderance of the evidence that it exists.'" (citation omitted) (first quoting *APWU* v. *Potter*, 343 F.3d 619, 627 (2d Cir. 2003); then quoting *Makarova* v. *United States*, 201 F.3d 110, 113 (2d Cir. 2000))).

For ease of reference, the Court refers to the Government's memorandum of law in support of its motion to dismiss as "Gov't Br." (Dkt. #12), and to Plaintiffs' memorandum of law in opposition to the motion to dismiss as "Pl. Opp." (Dkt. #15).

which Plaintiffs each sent graphic sexual images and references to Mr. Hink and other members of the Coast Guard.  (Judge Decl. ¶ 16; Hink Decl. ¶ 8).

Plaintiffs maintain that on the day of the alleged assault, they and Mr. Hink had gone to a bar and restaurant for a late lunch after work hours, where Mr. Hink consumed alcohol.  (Compl. ¶¶ 13-14).  Mr. Hink shared a bed with Mr. De Fazio that night and the following morning "went on a loud, anti-government rant" that made others uneasy.  (*Id.* ¶¶ 15-16).  As a result, Mr. Diaz, who was Mr. Hink's supervisor, sent Mr. Hink home because he was concerned about Mr. Hink's access to the armory and firearms.  (*Id.* ¶ 17).

The following evening, Mr. Hink, sounding intoxicated, called Mr. Li and said "that he had been sexually engaged by a fellow serviceman," but he "was unable to provide a clear or consistent accounting of the experience."  (Pl. Opp. 2 (citing Compl. ¶¶ 18-19)).  Mr. Li "offered emotional support and various resources for sexual assault victims, all of which [Mr.] Hink declined."  (*Id.* (citing Compl. ¶¶ 19-21)).

More than a year later, on or about October 11, 2023, Plaintiffs received notices of involuntary separation from the Coast Guard.  (Judge Decl. ¶ 17; *id.*, Ex. 2-5).  The notices informed Plaintiffs that the Coast Guard was initiating separation hearings against them because they had "maltreat[ed] person(s) subject to [their] orders through the deliberate and repeated objectively offensive comments by text message communications that were of a sexualized and crude nature."  (*Id.* ¶ 18; *id.*, Ex. 2-5).  Mr. De Fazio's notice also included the sexual assault allegation.  (*Id.* ¶ 19).  Plaintiffs each had administrative

separation board hearings, which took place on December 8, 2023 (Mr. Cummings), December 20, 2023 (Mr. Diaz), January 8, 2024 (Mr. Li), and January 10, 2024 (Mr. De Fazio).  (Compl. ¶¶ 28, 42, 55, 71; Judge Decl. ¶ 25; *id.*, Ex. 8-11; Hink ¶ 9).

Mr. Hink was ordered to appear and testify at all four hearings.  (Judge Decl. ¶¶ 22-23, 25-28).  He appeared in-person for Mr. De Fazio's hearing and virtually for the others, testifying under oath and subjected to cross-examination at each.  (*Id.* ¶ 27; Compl. ¶¶ 29-30, 43, 55, 72).  Each administrative separation board examined the contents of the group text message conversation.  (Judge Decl. ¶ 29; *id.*, Ex. 8-11).

In advance of Mr. De Fazio's hearing, Mr. Hink had received a travel order that "constitute[d] a voluntary call to active duty under [10 U.S.C. § 12301(d)]."  (Judge Decl., Ex. 7 at 1).  "[O]nce activity duty commence[d]," the order explained, "that duty [was] no longer considered voluntary for the purposes of termination."  (*Id.*).  This meant that Mr. Hink "was subject to the Uniform Code of Military Justice on the day he testified, that if he refused to testify he was subject to court-martial or other military discipline, and that he could not simply cho[o]se to end his period of active duty service prior [to] testifying."  (*Id.* ¶ 27).

For the virtual hearings, no travel order was required.  (Judge Decl. ¶ 27).  Nevertheless, Mr. Hink received a similar travel order for the first hearing (involving Mr. Cummings), although that order recognized that "no

travel may be needed" because the hearing "would be held via teleconference." (*Id.*, Ex. 7 at 8).

Following their hearings, each Plaintiff was administratively separated from the Coast Guard. (Compl. ¶¶ 31, 44, 56, 73; Judge Decl. ¶ 30; *id.*, Ex. 12-15).

## B.    Procedural Background

On December 16, 2024, Plaintiffs sued Mr. Hink in New York state court, alleging one count of defamation related to Mr. Hink's statements concerning his alleged sexual harassment and assault. (Dkt. #1-1). On February 19, 2025, the Government removed the case to this Court. (Dkt. #1). The Government attached to its notice of removal a certification from the then-Acting United States Attorney for the Southern District of New York certifying that Mr. Hink "was an employee of the United States when the alleged defamatory statements at issue in this lawsuit were made; and … was acting within his scope of employment for purposes of the claims asserted against him in this lawsuit." ("Certification" (Dkt. #1-2)).

On February 20, 2025, the Government filed a pre-motion letter requesting permission to move to substitute the United States as the defendant and dismiss the complaint for lack of subject matter jurisdiction. (Dkt. #5). The following day, the Court set a briefing schedule for the motion and noted, "[s]hould Plaintiffs seek to amend their complaint, they shall do so on or before March 21, 2025." (Dkt. #6). On March 26, 2025, Plaintiffs filed their own pre-motion letter seeking leave "to conduct expedited discovery, followed by an

evidentiary hearing if necessary, to determine whether or not the United States is a proper party to this action, and if not, then for this action to be remanded to [s]tate [c]ourt." (Dkt. #8).  The Government opposed Plaintiffs' request (Dkt. #9), and the Court denied it on April 1, 2025, reasoning that it could determine whether Mr. Hink acted within the scope of his employment when deciding the Government's motion (Dkt. #10).

On April 21, 2025, the Government filed its motion to substitute the United States as defendant and dismiss the complaint for lack of subject matter jurisdiction.  (Dkt. #11; Gov't Br.).  On May 27, 2025, Plaintiffs submitted their brief in opposition.  (Pl. Opp.).  The Government submitted its reply brief and supporting documents (including the declarations of Mr. Judge and Mr. Hink) on June 17, 2025.  (Dkt. #20-23).  The Government also asked to file portions of certain documents under seal (Dkt. #18-19), which request the Court granted (Dkt. #24).  Later, on November 22, 2025, Plaintiffs sought a discovery conference pursuant to Federal Rule of Civil Procedure 26(f).  (Dkt. #25).  The Government opposed (Dkt. #26), and the Court denied Plaintiffs' request, deeming it more efficient to resolve the Government's motion first (Dkt. #27).

## DISCUSSION

### A.    Applicable Law

The Government moves under Rule 12(b)(1), which permits a party to move to dismiss a complaint for "lack of subject-matter jurisdiction."  Fed. R. Civ. P. 12(b)(1).  "A case is properly dismissed for lack of subject matter

6

jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Lyons* v. *Litton Loan Servicing LP*, 158 F. Supp. 3d 211, 218 (S.D.N.Y. 2016) (quoting *Makarova* v. *United States*, 201 F.3d 110, 113 (2d Cir. 2000)).

The Second Circuit has drawn a distinction between two types of Rule 12(b)(1) motions: (i) facial motions and (ii) fact-based motions.  *See Carter* v. *HealthPort Techs., LLC*, 822 F.3d 47, 56-57 (2d Cir. 2016); *see also Katz* v. *Donna Karan Co., L.L.C.*, 872 F.3d 114, 119 (2d Cir. 2017).  A facial Rule 12(b)(1) motion is one "based solely on the allegations of the complaint or the complaint and exhibits attached to it."  *Carter*, 822 F.3d at 56.  A plaintiff opposing such a motion bears "no evidentiary burden."  *Id.*  Instead, to resolve a facial Rule 12(b)(1) motion, a district court must "determine whether [the complaint and its exhibits] 'allege[ ] facts'" that establish subject matter jurisdiction.  *Id.* (quoting *Amidax Trading Grp.* v. *S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011) (per curiam)).  And to make that determination, a court must accept the complaint's allegations as true and draw all reasonable inferences in favor of the plaintiff.  *Id.* at 57.

"Alternatively, a defendant is permitted to make a fact-based Rule 12(b)(1) motion, proffering evidence beyond the [complaint and its exhibits]" — as the Government has done here.  *Carter*, 822 F.3d at 57; *see also MMA Consultants 1, Inc.* v. *Rep. of Peru*, 719 F. App'x 47, 49 (2d Cir. 2017) (summary order) (defining fact-based Rule 12(b)(1) motion as one where "the defendant puts forward evidence to challenge the factual contentions underlying the

7

plaintiff's assertion of subject-matter jurisdiction").  "In opposition to such a motion, plaintiffs must 'come forward with evidence of their own to controvert that presented by the defendant,' or may instead 'rely on the allegations in their pleading if the evidence proffered by the defendant is immaterial because it does not contradict plausible allegations that are themselves sufficient to show standing.'"  *Katz*, 872 F.3d at 119 (alteration adopted) (quoting *Carter*, 822 F.3d at 57).  If a defendant supports its fact-based Rule 12(b)(1) motion with "material and controverted" "extrinsic evidence," a "district court will need to make findings of fact in aid of its decision" as to subject matter jurisdiction. *Carter*, 822 F.3d at 57.

**B.    Analysis**

> **1.    The Court Substitutes the United States for Mr. Hink as the Sole Defendant**

>> **a.    The United States Has Filed the Requisite Certification**

The United States and its agencies are entitled to sovereign immunity. *F.D.I.C.* v. *Meyer*, 510 U.S. 471, 475 (1994).  A court therefore only has jurisdiction over a lawsuit against the United States if the Government has consented to be sued.  *Id.*  As relevant here, the Government has provided a limited waiver of its sovereign immunity under the FTCA for certain torts committed by its employees within the scope of their employment.  *See* 28 U.S.C. § 1346(b)(1); *id.* § 2679(b)(1).  The FTCA also provides that for any such federal employee sued individually, the United States must be substituted as the party defendant when the Attorney General, or a United States Attorney as designee, certifies "that the defendant employee was acting within the scope of

8

his office or employment at the time of the incident out of which the claim arose." 28 U.S.C. § 2679(d)(1); 28 C.F.R. § 15.4; *see also Carroll* v. *Trump*, 49 F.4th 759, 760-61 (2d Cir. 2022) (setting forth this framework).

In this case, Plaintiffs bring tort claims against Mr. Hink, but they can only assert those claims against the United States: The Acting United States Attorney certified that Mr. Hink "was an employee of the United States when the alleged defamatory statements at issue in this lawsuit were made; and ... was acting within his scope of employment for purposes of the claims asserted against him in this lawsuit." (Certification). Therefore, "the United States shall be substituted as the party defendant." 28 U.S.C. § 2679(d)(2); *see also B & A Marine Co.* v. *Am. Foreign Shipping Co.*, 23 F.3d 709, 713 (2d Cir. 1994) ("To emphasize the exclusivity of the remedy against the United States under the FTCA, § 2679(d) requires that the United States be substituted as the party defendant upon certification ... that the defendant employee was acting within the scope of his employment." (emphasis omitted)).

### b.    Plaintiffs' Challenges to the Substitution Fail

Plaintiffs challenge this substitution and renew their request for limited discovery and an evidentiary hearing. (Pl. Opp. 4-8). A court need only review a scope-of-employment certification if Plaintiffs "allege[ ] with particularity facts relevant to the scope-of-employment issue." *Spina* v. *Lu Feng Liu*, 541 F. Supp. 3d 426, 431 (S.D.N.Y. 2021) (quoting *McHugh* v. *Univ. of Vt.*, 966 F.2d 67, 72-74 (2d Cir. 1992)). Because Plaintiffs' arguments do not pass muster, the Court accepts the Certification and substitutes the United States as Defendant.

*First*, Plaintiffs contend that Mr. Hink's statements were outside the scope of his employment because he made them with malicious intent and for his own personal gain and benefit — that is, to preemptively discredit Plaintiffs and avoid being discharged from the Coast Guard based on his own "misconduct and erratic conduct," and, relatedly, to manufacture a claim for disability benefits. (Pl. Opp. 4-7). Such intentional torts, Plaintiffs argue, are necessarily outside the scope of Mr. Hink's employment. (*Id.* at 4). The Court disagrees and finds that Mr. Hink was acting within the scope of his employment — from the time he reported the harassment and assault through his testimony.

To start, Mr. Hink's report to the Coast Guard Sexual Assault Response Coordinator was mandated by Coast Guard policy. The U.S. Coast Guard Civil Rights Manual requires that "[a]ny individual witness to harassing behaviors should report the inappropriate conduct to their supervisor or anyone in their chain of command immediately so that it may be addressed." (Judge Decl., Ex. 1 at 3-9). The Manual also requires that "[a]ll allegations of sexual assault, aggravated sexual contact, and abusive sexual contact must be reported to Coast Guard Criminal Investigative Service." (*Id.* at 3-21). Mr. Hink reported the harassment and assault pursuant to Coast Guard policy and thus acted within the scope of his employment.

Next, Mr. Hink's cooperation with the Coast Guard investigation was part of his responsibilities as a member of the Coast Guard. As the Government explains, "[i]t is the position of the Coast Guard that Hink's cooperation with

the Coast Guard Investigative Service's investigation was in the scope of his employment." (Judge Decl. ¶ 15; *see also* Hink Decl. ¶¶ 3, 7). Plaintiffs do not argue otherwise or present any evidence of their own to controvert the Government's position. *See Katz*, 872 F.3d at 119 ("In opposition to [a fact-based Rule 12(b)(1)] motion, plaintiffs must 'come forward with evidence of their own to controvert that presented by the defendant,'" or otherwise rely on their complaint. (quoting *Carter*, 822 F.3d at 57)). And it makes sense that complying with an employer's investigation is within the scope of employment. *See New York* v. *United Parcel Serv., Inc.*, 253 F. Supp. 3d 583, 669 (S.D.N.Y. 2017) ("An act is deemed to be within the scope of employment if it is performed while an employee is engaged generally in the business of his employer, or if his act may be reasonably said to be necessary or incidental to such employment."), *aff'd*, 942 F.3d 554 (2d Cir. 2019).

During the course of the investigation, the Coast Guard reviewed the group text conversation among Plaintiffs, Mr. Hink, and others, which prompted the Coast Guard to initiate separation proceedings against each Plaintiff. (Judge Decl. ¶¶ 16-18; *id.*, Ex. 2-5; Hink Decl. ¶ 8). Under orders and under oath, Mr. Hink testified at each hearing. (Judge Decl. ¶¶ 22-23, 25-28; *id.*, Ex. 8-11; Hink Decl. ¶ 9). The Court recognizes that Mr. Hink did not receive travel orders for the hearings of Mr. Li or Mr. Diaz, but it finds that his participation in those hearings was nevertheless within the scope of his

employment — and it does not understand Plaintiffs to argue otherwise.[2]
Thus, when Mr. Hink reported the sexual harassment and assault, cooperated
with the Coast Guard's investigation, and testified at Plaintiffs' administrative
separation board hearings, he did so within the scope of his employment with
the Coast Guard.

To reinforce this finding, the Court considers the five factors identified by
the New York Court of Appeals for determining whether an employee has acted
within the scope of his employment.[3]  They are: "[i] the connection between the
time, place and occasion for the act; [ii] the history of the relationship between
employer and employee as spelled out in actual practice; [iii] whether the act is
one commonly done by such an employee; [iv] the extent of departure from
normal methods of performance; and [v] whether the specific act was one that
the employer could reasonably have anticipated."  *Riviello* v. *Waldron*, 47
N.Y.2d 297, 303 (1979).  Mr. Hink's report, cooperation, and testimony were
directly connected in time, place, and occasion with his employment with the
Coast Guard.  He claimed to have been assaulted by a fellow member of the
Coast Guard while both were on duty; he followed Coast Guard policies and
procedures in making his allegations thereafter; and he obeyed orders to

---

[2]     Rather, the Court understands Plaintiffs to argue that the statements Mr. Hink gave
        once present at the hearings were outside the scope of his employment.

[3]     "The law to be applied is that of the place where the United States employee's act or
        omission occurred."  *Ward* v. *United States*, No. 20 Civ. 5676 (JPO), 2021 WL 3862854,
        at *2 n.1 (S.D.N.Y. Aug. 30, 2021) (first citing 28 U.S.C. § 1346(b)(1); then citing
        *Hernandez* v. *United States*, 939 F.3d 191, 198 (2d Cir. 2019)), *aff'd*, No. 21-2648-cv,
        2022 WL 1509672 (2d Cir. May 13, 2022) (summary order).  Here, Plaintiffs plead that
        all of Mr. Hink's allegedly defamatory conduct occurred in New York.  (Compl. ¶¶ 4-5,
        29-30, 43, 55, 72).

appear to testify at each of Plaintiffs' administrative separation board hearings. *See id.* Reporting intra-office sexual harassment and assault and cooperating with the resulting investigation are required by Coast Guard policy, and thus commonly done, within the normal methods, and anticipated by the Coast Guard when such harassment or assault occurs. *See id.*

Further, Plaintiffs' assertions that Mr. Hink's statements were motivated by malicious intent and self-interest are not supported by sufficiently particularized facts to controvert the Certification. *See Spina,* 541 F. Supp. 3d at 431. For one thing, Plaintiffs base these assertions on their subjective beliefs about Mr. Hink's motivations. (*See* Pl. Opp. 4 (citing to paragraphs in each Plaintiff's declaration where they allege Mr. Hink's malicious intent); Diaz Decl. ¶ 9 (Mr. Diaz stating a reason that he "suspect[s]" Mr. Hink "may" have fabricated allegations is based in part on Mr. Diaz's own "speculation"); De Fazio Decl. ¶ 8 (basing his "suspicion[s]" on his own "personal[ ] belie[fs]")). But it is "not enough" to challenge a scope-of-employment certification with only "subjective belief." *Marley* v. *Ibelli*, 52 F. App'x 564, 566 (2d Cir. 2002) (summary order) (concluding "substitution was proper" where the plaintiff's "only evidence … [was] his subjective belief that the conduct was … motivated by unlawful bias").

For another, even if Mr. Hink's statements were indeed false and defamatory, such statements likely remain within the scope of his employment. *See Ward* v. *United States*, No. 20 Civ. 5676 (JPO), 2021 WL 3862854, at *3 (S.D.N.Y. Aug. 30, 2021) (holding that the filing of "criminal complaints based

13

on falsehoods" was "normal and foreseeable by employers under New York law," and thus defendant "acted as an employee under the fourth and fifth factors of the *Riviello* test"), *aff'd*, No. 21-2648-cv, 2022 WL 1509672 (2d Cir. May 13, 2022) (summary order).  In addition, although the group text conversation was the cause for the administrative separations, Plaintiffs nowhere allege that Mr. Hink fabricated that conversation or Plaintiffs' participation in it.  Their assertions of malicious motivation therefore fail to engage with critical facts.

*Second*, Plaintiffs argue that the Government focuses on too narrow a set of Mr. Hink's actions.  They contend that the relevant conduct was not just his hearing testimony, but also his false statements leading up to those hearings. (Pl. Opp. 8-9).  But that is not what Plaintiffs allege in their Complaint.  The Complaint states that "the defamatory conduct in question" took place "during a real-time virtual interaction with a New York audience" and "in person in Staten Island" — references to the administrative separation board hearings. (Compl. ¶¶ 4-5; *see also id.* ¶¶ 29-30, 43, 55, 72).  As it happens, the same result would obtain even if the Court agreed with Plaintiffs that their Complaint alleged pre-hearing defamation.  For the reasons just explained, Mr. Hink's reporting of the harassment and assault and later cooperation constituted conduct within the scope of his employment.

The Court therefore accepts the Acting United States Attorney's Certification and concludes that it is proper to substitute the United States as the party defendant.  *See* 28 U.S.C. § 2679(d)(2); 28 C.F.R. § 15.4.  As a result,

14

the Court also denies Plaintiffs' renewed request for limited discovery and an evidentiary hearing.

### 2. The Court Dismisses the Complaint for Lack of Subject Matter Jurisdiction

#### a. The United States Has Not Waived Sovereign Immunity for Defamation Claims

The Court lacks subject matter jurisdiction because the Government is immune from Plaintiffs' claims. To review, the FTCA provides a limited waiver of sovereign immunity for certain torts. *B & A Marine Co.*, 23 F.3d at 712. Plaintiffs' defamation claims are not among them: "The FTCA, expressly, does not waive the sovereign immunity of the United States for the tort of defamation." *Carroll*, 49 F.4th at 766. "So substituting the United States in place of [Mr. Hink] means the failure of [Plaintiffs'] defamation lawsuit." *Id.* The Court lacks subject matter jurisdiction and can dismiss the Complaint on this ground alone. Indeed, Plaintiffs appear to recognize the fatality of this conclusion, which is why they devote most of their briefing to resisting substitution in the first place.

#### b. Plaintiffs' Claims Do Not Have a Private Party Analog Because Mr. Hink Would Be Absolutely Immune from Liability for Statements Made in a Quasi-Judicial Proceeding

In the interests of completeness, the Court considers the Government's alternative arguments opposing the Court's subject matter jurisdiction. The Government relies on the private-party-analog principle: If a private party would be immune from suit for tortious conduct, the United States does not waive its sovereign immunity to be sued for the same conduct. *See Chen* v.

*United States*, 854 F.2d 622, 625–26 (2d Cir. 1988).  Although this inquiry is "a merits determination," given "the unique context of the FTCA," it is also required "to establish subject-matter jurisdiction."  *Brownback* v. *King*, 592 U.S. 209, 217-18 (2021).  The Government argues that Plaintiffs lack a private party analog because Mr. Hink would have absolute immunity for his statements made at the administrative separation hearings.  (Gov't Br. 8-11).  The Court agrees.

Absolute immunity "entirely immunizes an individual from liability in a defamation action, regardless of the declarant's motives[.]"  *Stega* v. *N.Y. Downtown Hosp.*, 31 N.Y.3d 661, 669 (2018).  It applies to statements "made in the course of a judicial proceeding," *Meyers* v. *Amerada Hess Corp.*, 647 F. Supp. 62, 64 (S.D.N.Y. 1986), or a "quasi-judicial" proceeding, "'as long as such statements are material and pertinent to the questions involved' in the proceeding," *Stega*, 31 N.Y.3d at 669-70 (quoting *Wiener* v. *Weintraub*, 22 N.Y.2d 330, 331 (1968)).

Quasi-judicial proceedings take place "before an officer having attributes similar to a court."  *Stega*, 31 N.Y.3d at 670 (quoting *Toker* v. *Pollak*, 44 N.Y.2d 211, 219 (1978)).  That means "both parties [are] entitled to participate" and "[t]he administrative body [is] empowered, based upon its findings, to take remedial action[.]"  *Id.* at 670-71 (emphasis omitted) (quoting *Toker*, 44 N.Y.2d at 222).  The "absolute privilege attaches to 'every step' of a quasi-judicial proceeding," including steps which "take[ ] place before an actual hearing," such as "preparation for those proceedings."  *Meyers*, 647 F. Supp. at 65

16

(quoting *Stilsing Elec., Inc.* v. *Joyce*, 495 N.Y.S.2d 999, 1002 (1985)); *see also*
*Rolon* v. *Henneman*, 517 F.3d 140, 146 (2d Cir. 2008) (holding that defendant
had absolute immunity for statements made as a witness in an arbitration
hearing when "he took an oath, offered testimony, responded to questions on
direct and cross-examination, and could have been prosecuted for perjury").

The administrative separation hearings in this case have the hallmarks
of a quasi-judicial proceeding.  The hearings are run by "formal boards of
investigation."  Enlisted Personnel Administrative Boards Manual, Personnel
Service Command Instruction M1910.1, 1.A.3(a) (July 2018),
https://www.dcms.uscg.mil/Portals/10/CG-1/psc/psd/docs/EPAB%20
(Change%201%20Jul%202018).pdf?ver=2018-08-10-081347-997.  The
accused is entitled to be represented by counsel, to be present during board
proceedings, to examine and object to evidence and witness testimony, to
cross-examine witnesses, to introduce evidence and witnesses, to testify under
oath, and to make opening and closing arguments.  *Id.* at 1.C.5.  "[T]he
convening authority" of the hearing has the power to "secure the attendance" of
witnesses through use of "inherent authority as military officers to compel the
appearance of witnesses subject to orders."  *Id.* at 4.B.3.  All witnesses at an
administrative separation hearing "testify under oath or affirmation."  *Id.* at
6.D.4.  And after a hearing, administrative separation boards make findings
and a recommendation regarding whether the accused should be discharged
from the Coast Guard.  *Id.* at 1.G.1.

For these reasons, the Government argues that the administrative separation board hearings are quasi-judicial proceedings at which Mr. Hink was entitled to absolute immunity for his statements (and thus the Government would be too, standing in his shoes). (Gov't Br. 10-11). Plaintiffs' best counterargument seizes on a clever nuance — that only one plaintiff at a time was present at any particular hearing. (Pl. Opp. 10-11). The other three were not "entitled to participate" because they were not parties to the proceeding. *Stega*, 31 N.Y.3d at 670 (quoting *Toker*, 44 N.Y.2d at 222). Plaintiffs argue that this fact is enough to render the hearings not quasi-judicial. (Pl. Opp. 10-11).

Although that argument has some facial appeal, it falls apart on closer examination. The purpose of absolute immunity for judicial and quasi-judicial proceedings is to allow witnesses to testify honestly without concern that they will later have to defend themselves against civil retribution. *Stega*, 31 N.Y.2d at 669. The requirement that both parties have the opportunity to participate goes to determining whether the proceeding is quasi-judicial, not whether immunity attaches. Understanding the requirement as Plaintiffs urge would pervert the purpose of absolute immunity; it would make no sense, for example, to permit a non-party to a trial to sue a testifying witness for giving honest, material, pertinent statements that happen to implicate the non-party. *See Park Knoll Assocs.* v. *Schmidt*, 59 N.Y.2d 205, 209 (1983) (Witnesses "are granted this protection for the benefit of the public, to promote the administration of justice, and *only incidentally* for the protection of the

participants." (emphasis added)).  The Court therefore agrees with the Government that Mr. Hink is absolutely immune from Plaintiffs' defamation claims for his statements made at the administrative separation hearings, and so is the Government in his shoes.

Plaintiffs also take aim at the statements Mr. Hink made prior to the hearings, arguing that he would only have qualified immunity for those pre-hearing statements.  (Pl. Opp. 11-12).  What is more, Plaintiffs say they overcome Mr. Hink's qualified immunity because he made the pre-hearing statements with malice.  (*Id.* at 12).  *See Stega*, 31 N.Y.2d at 670 (explaining that qualified immunity does not protect statements made with malice).  This argument fails for two reasons, both already discussed above.  *First*, the only defamatory conduct Plaintiffs pleaded was Mr. Hink's statements at the hearings, not statements made before.  *Second*, Plaintiffs have failed to allege with sufficient particularity facts that support their assertion that Mr. Hink acted with malicious intent.

### c.    Plaintiffs Failed to Exhaust Their Administrative Remedies

Finally, the Government argues that Plaintiffs fail to establish the Court's subject matter jurisdiction because they do not allege exhaustion of administrative remedies.  (Gov't Br. 5-6 ("The FTCA 'foreclose[s] suit unless the tort claimant has previously presented to the appropriate administrative agency a claim that meets the specific statutory requirements as to its form, content, and timing.'" (alteration in original) (quoting *Millares Guiraldes de Tineo* v. *United States*, 137 F.3d 715, 719 (2d Cir. 1998)))).  Plaintiffs concede

that they have failed to exhaust. (Pl. Opp. 1, 13). So for this reason, too, the Court lacks subject matter jurisdiction.

In admitting their failure to exhaust, Plaintiffs request that, if the Court substitutes the United States as Defendant, it dismiss the case without prejudice "in order to allow Plaintiffs to exhaust their administrative remedies." (Pl. Opp. 13). Given the basis of its dismissal, the Court must dismiss the Complaint without prejudice. *See Green* v. *Dep't of Educ.*, 16 F.4th 1070, 1074 (2d Cir. 2021) ("[D]ismissals for lack of subject matter jurisdiction 'must be without prejudice, rather than with prejudice.'" (quoting *Carter*, 822 F.3d at 54)). That said, the Court is skeptical that exhaustion will yield any benefit to Plaintiffs. As the Court has already explained, Plaintiffs are pursuing a case barred by sovereign immunity. Even if they exhaust their administrative remedies before returning to federal court, the Court would still lack subject matter jurisdiction under the FTCA.

Plaintiffs also request leave to amend their Complaint, in the event that the Court rules in favor of the Government. (Pl. Opp. 12-13). The Court denies their request. A court should not ordinarily consider the merits of a plaintiff's claims after determining that it lacks subject matter jurisdiction. *See Oliveras* v. *United States*, 371 F. Supp. 3d 105, 113-14 (S.D.N.Y. 2019) (citing *Cornwell* v. *Credit Suisse Grp.*, 666 F. Supp. 2d 381, 385-86 (S.D.N.Y. 2009)) ("[A]bsent authority to adjudicate, the Court lacks a legal basis to grant any relief, or even consider the action further."). And ruling on a request to amend a complaint can go to the merits of a plaintiff's claims. *See MetLife Invs. USA Ins. Co.* v.

*Zeidman*, 734 F. Supp. 2d 304, 310 (E.D.N.Y. 2010) (citing *Ruotolo* v. *City of New York,* 514 F.3d 184, 191 (2d Cir. 2008)) ("In deciding whether to grant a motion to amend, a Court must consider, among other things, whether the amended complaint fails to state a valid claim for relief.  If a proposed amended complaint fails to state a valid claim for relief, then the amendment is futile, and should not be permitted."), *aff'd sub nom. MetLife Invs. USA Ins. Co.* v. *Pratt*, 442 F. App'x 589 (2d Cir. 2011) (summary order).  And while it is true that "in the unique context of the FTCA, all elements of a meritorious claim are also jurisdictional," *Brownback*, 592 U.S. at 217, the Court understands at least some of Plaintiffs' contemplated amendments to turn more on the merits of their claims than on the Court's jurisdiction to consider them.

Plaintiffs seek leave to amend and "include additional allegations as to why [Mr.] Hink's statements were not made in the scope of his employment, allegations about statements made outside of the [administrative separation hearings], and ... other causes of actions including intentional infliction of emotional distress, negligent infliction of emotional distress, and *prima facie* tort."  (Pl. Opp. 12).  But while Plaintiffs could plead additional facts to substantiate their assertions that Mr. Hink's statements were malicious and therefore outside the scope of his employment, the Court does not believe these amendments would result in its having subject matter jurisdiction.  *See Dorking Genetics* v. *United States*, 76 F.3d 1261, 1265 (2d Cir. 1996) ("A plaintiff may not by artful pleading avoid the statutory exceptions to the FTCA. 'In determining the applicability of the [exceptions to FTCA liability], a court

must look, not to the theory upon which the plaintiff elects to proceed, but rather to the substance of the claim which he asserts.'" (quoting *Lambertson* v. *United States*, 528 F.2d 441, 443 (2d Cir. 1976))).  In any event, the contemplated amendments would not cure Plaintiffs' failure to exhaust.  For all of these reasons, the Court denies Plaintiffs' request to amend their Complaint.

## CONCLUSION

For the foregoing reasons, the Government's motion to substitute the United States as Defendant and to dismiss for lack of subject matter jurisdiction is GRANTED.  The Court dismisses the action without prejudice for lack of subject matter jurisdiction.  The Clerk of Court is directed to terminate all pending motions, adjourn all remaining dates, and close this case.

SO ORDERED.

Dated:      February 6, 2026
            New York, New York

_____
        KATHERINE POLK FAILLA
        United States District Judge

22